IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN ANDREKOVICH**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:11cv1364 |
| | ) | **Electronic Filing** |
| **LAWRENCE CHENOGA; DONNA** | ) | |
| **LELLOCK; MICHAEL PORADA;** | ) | |
| **ROBERT REESMAN; WILLIAM** | ) | |
| **SPENCER; ROGER STEELE;** | ) | |
| **SUSAN GLESSNER;** and **THOMAS** | ) | |
| **FEDIGAN,** | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff commenced this civil rights action seeking redress for alleged violations of his rights to procedural due process. Presently before the court is plaintiff's motion for leave to file a second amended complaint. Defendants oppose the motion. For the reasons set forth below, plaintiff's motion will be granted and defendants will be directed to file an answer.

Rule 15(a) provides that leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). Determinations of whether to grant leave are committed to the sound discretion of the court. Foman v. Davis, 371 U.S. 178, 182 (1962). Grounds that justify a denial or conditional restriction include "undue delay, bad faith, dilatory motive, prejudice, and futility." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). Denying leave based upon one or more of these factors must be grounded in specific findings that justify the exercise of the court's discretion. Coventry v. United States Steel Corp., 856 F.2d 514, 518 (3d Cir. 1988).

Defendants contend that granting leave would be futile because plaintiff's proposed second amended complaint suffers from the same fatal deficiencies defendants highlighted in their motion to dismiss plaintiff's first amended complaint. Those deficiencies include the failure to state a claim, untimeliness, non-cognizable damages and so forth. In addition, defendants complain that they will incur additional legal fees by yet again having to file a new motion to dismiss. Plaintiff contends that amendment is appropriate and needed to define properly the scope of his claims and the relief requested.

Defendants essentially challenge plaintiff's proposed second amended complaint pursuant to the standards governing a Rule 12(b)(6) motion and seek a ruling on the propriety of the claims therein. Accordingly, plaintiff's motion to amend will be resolved by assessing the allegations in the proposed second amended complaint pursuant to the standards governing a motion to dismiss.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)).

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has

3

been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

Under the above standards the second amended complaint sets forth the following. Plaintiff Brian Andrekovich became employed by Punxsutawney Borough ("Borough") as a police officer in 1996. Second Amended Complaint at ¶ 1. On the morning of August 15, 2009, plaintiff lawfully arrested an individual ("arrestee") for public drunkenness at a local business. Id. at ¶ 17. Plaintiff transported the arrestee to the Borough police station, where the warden logged the arrestee into custody. Id. at ¶ 18. The arrestee had fallen asleep and in order to prevent him from aspirating, the decision was made to leave the arrestee in the back of the police vehicle to inhibit him from rolling onto his back. Id. at ¶ 19. The arrestee was checked regularly over the next several hours by plaintiff and the warden and observed by the Borough Mayor and found to be sleeping; however, at the end of plaintiff's shift, the relieving officer discovered that the arrestee had died. Id. at ¶ 20-21.

On the same day, Defendant Thomas Fedigan, Chief of Police, lodged a criminal complaint with the Pennsylvania State Police, who commenced a criminal investigation of plaintiff. Id. at ¶ 22. Plaintiff immediately was suspended from the police force without notice or a hearing. Id. at ¶ 23.

Fedigan investigated the incident by interviewing several members of the police department, the warden and the mayor. He then conducted an interrogative custodial interview of plaintiff on September 8, 2009. Id. at ¶ 24. During this interview Fedigan questioned plaintiff about his conduct on August 15, 2009, but did not inform plaintiff of any charges against him. Id. at ¶¶ 24-25. Plaintiff did not receive "Miranda" warnings nor was he advised of any right to obtain representation. Id. at ¶ 26.

On September 8, 2009, Fedigan did provide plaintiff with a warning pursuant to Garrity v. New Jersey, 385 U.S. 493 (1967).  Thereafter, Fedigan mischaracterized plaintiff's statements and the evidence from the investigation and improperly used the same against plaintiff at a hearing before the Unemployment Compensation Board of Review.  Id. at ¶ 27.

On October 30, 2009, Fedigan conducted what he characterized as a Loudermill hearing.  Id. at ¶ 28.  Plaintiff received notice of the hearing less than 24 hours earlier.  Id. at ¶ 29.  At the hearing Fedigan did not allow plaintiff to complete his answers and did not inform him of the charges against him.  Id. at ¶ 29.  Fedigan informed plaintiff that evidence existed against him which did not exist and he attempted to get plaintiff to admit to certain factual acts which had not occurred.  Id. at ¶ 30.

On or shortly before November 3, 2009, Fedigan conveyed to the Borough's council members that plaintiff had violated nonexistent "rules," "regulations," and "policies" and that he had deliberately omitted relevant information from his account of the incident.  Id. at ¶ 32.

On November 3, 2009, Borough Council members Lawrence Chenoga, Donna Lellock, Michael Porado, Robert Reesman, William Spencer and Roger Steele voted to bring public charges against plaintiff and to terminate his employment.[1]  Id. at ¶ 33.  Defendants knew that plaintiff could not be terminated without cause and that cause did not exist for such action.  Id. at ¶ 35.  Defendants also knew that other officers were involved in maintaining the custody of the arrestee and yet singled plaintiff out for investigation, suspension and termination.  Id. at ¶ 36.

On November 5, 2009, plaintiff was informed of his termination and for the first time, learned of the charges against him.  Id. at ¶ 37.  The charges were filed publicly on that day.  Id. They included an allegation that plaintiff had been dishonest at the October 30, 2009, hearing by

---

[1] Borough Council member Susan Glessner did not participate in the vote.  Id.

failing to admit to the charges which were first disclosed to plaintiff on November 5, 2009. Id. at 31. Plaintiff timely appealed his termination to the Punxsutawney Civil Service Commission ("the CSC").[2] Id. at ¶ 38.

The CSC conducted an evidentiary hearing on April 28, 2010, and April 29, 2010. Id. at ¶ 40. On July 15, 2010, it exonerated plaintiff of all charges. It determined that the evidence relied upon to effectuate the suspension and termination did not exist and plaintiff had been accused of being dishonest for failing to admit to events that did not occur. Id. at 41. It ordered plaintiff's reinstatement with full back-pay. Id.

Borough Council did not reinstate plaintiff or give him back pay. Id. at ¶ 42. It did appeal the CSC's decision to the Court of Common Pleas of Jefferson Count, which denied the appeal and affirmed the CSC's decision on February 23, 2011. Id. at ¶ 44. Borough Council appealed and on November 10, 2011, the Commonwealth Court of Pennsylvania affirmed. Id. at ¶ 46. The instant lawsuit was filed on October 26, 2011. On April 19, 2012, Borough Council disbursed plaintiff's back pay. Id. at ¶ 49.

Plaintiff seeks to establish that defendants engaged in a continuing course of conduct that deprived him of his rights to liberty and property without proper due process. Id. at ¶¶ 12-14. He claims the following forms of injury and/or loss: loss of income; loss of overtime pay from suspension through reinstatement; damage to his reputation; mental anguish; pain, suffering and humiliation; embarrassment; lost employment opportunities in law enforcement; injury to his personal reputation in the community; and injury to his professional reputation resulting in

---

[2] On March 15, 2010, the Attorney General of Pennsylvania declined to prosecute plaintiff due to a lack of evidence of any criminal conduct. Id. at ¶ 39.

impaired earning capacity.  Id. at ¶¶ 52-56.  Plaintiff also incurred attorneys fees and costs from the termination hearing and the numerous legal proceedings that followed.  Id. at ¶ 55.

Defendants' essentially move to dismiss on the grounds that (1) plaintiff seeks remedies that he is not entitled to in the form of back pay, reinstatement and overtime pay, (2) plaintiff had sufficient notice of the grounds upon which the suspension and termination were based, thereby eviscerating any entitlement to relief under Laudermill, (3) plaintiff's attempt to recover for any injury from his suspension is time-barred, and (4) plaintiff's complaint does not set forth a § 1983 claim for injury to his reputation because he cannot establish (a) the elements or damages for such a claim or (b) that Chief Fedigan made the decision to pursue the criminal investigation.  Plaintiff maintains that he has set forth claims for violation of due process, redress for his suspension is appropriate under the "continuing violation" doctrine, he has sustained numerous forms of compensable injury, and he can pursue redress for lost employment opportunities that would have been obtained independent from his employment with the Borough.

Plaintiff has set forth claims for violation of due process.  In order to establish liability under 42 U.S.C. §1983, a plaintiff must demonstrate "that the defendants, acting under the color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused . . . injury."  Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 219 (3d Cir. 2009) (quoting Elmore v. Cleary, 399 F. 3d 279, 281 (3d Cir. 2005)).  The Third Circuit has articulated that a plaintiff seeking to establish a procedural due process claim must show that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him do not provide 'due process of law.'"  Id. (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

Plaintiff's complaint states a Loudermill due process claim. Property interests are determined by state law. Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). Subject to a few enumerated exceptions, municipal employees who fall with the scope of the Pennsylvania Borough Code can only be suspended, terminated or demoted for cause. Id. at 230 (citing 53 P. S. § 46190). Such employees have a property right in their employment. Id. (there can be no dispute that an individual whose employment falls within the scope of § 46190 has a property interest triggering the protections of the Fourteenth Amendment.) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982)). Similarly, collective bargaining agreements governing the employment of such individuals can create the same protection. Id. ("Today it is beyond dispute that a contract with a state entity can give rise to a property right protected by the Fourteenth Amendment.") (quoting Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1397 (3d Cir. 1991) and citing Stana v. Sch. Dist. of City of Pittsburgh, 775 F.2d 122, 126 (3d Cir. 1985)).

Plaintiff alleges that he was afforded protection under 53 P.S. § 46190 because of his position as a police officer and the collective bargaining agreement governing his employment. Second Amended Complaint at ¶¶ 1, 35. Consequently, plaintiff has averred a property interest that is entitled to due process protection under the Fourteenth Amendment.

Plaintiff sufficiently has alleged that he was denied the process needed to comply with the Fourteenth Amendment. The Supreme Court has referred to an individual's opportunity for a hearing before being deprived of any significant property interest as "the root requirement" of the Due Process Clause. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). While a pre-termination hearing is necessary, it does not need to be elaborate. Id. at 545. As part of the pre-termination hearing, the employee is entitled to (1) oral or written notice of the charges against him, (2) an explanation of the employer's evidence and (3) an opportunity to present his

side of the story.  Id. at 546 ; accord McDaniels v. Flick, 59 F.3d 446, 454 (3d Cir. 1995) (same).

Notice and an opportunity to respond are the essential requirements of due process and any pre-suspension or pre-termination hearing.  Loudermill, 470 U.S. at 546.  Sufficient notice (1) explains the nature of the charges and the evidence against the employee and (2) is timely given the particular circumstances of the case.  Gniotek v. City of Philadelphia, 808 F.2d 241, 244 (3d Cir. 1986).  In appropriate circumstances advanced notice of the pre-termination hearing is not required.  Id.  Nevertheless, to be meaningful and thus effective the notice must be given in a manner that apprises the individual of the substance of the matter at hand and permits adequate time to present any counter information and response.  McDaniels, 59 F.3d at 454-57.

Andrekovich did not receive notice or a hearing before his suspension on August 15, 2009.  Second Amended Complaint at ¶ 23.  In fact, he was suspended on the very day of the arrestee's death.  No explanation of the charges or basis for the suspension was provided.  Id. at ¶¶ 23-25.  On September 8, 2009, Defendant Fedigan interviewed all employees working before the arrestee's death, including plaintiff, but again did not inform plaintiff of the charges against him.  Id. at ¶¶ 24-25.  In fact, plaintiff was not informed of the actual charges being leveled against him until after his termination.  Id. at ¶ 37.

Plaintiff adequately has alleged that the notice received on the day of the hearing did not permit him to formulate a meaningful response.  The formal charges were not revealed to plaintiff on the day of the hearing.  During the hearing plaintiff was not permitted to finish his answers.  When plaintiff received notice of the actual charges five days later he learned that they were premised on facts that did not exist or had not occurred.  He also learned that he had been charged with falsely refusing to admit to non-existent facts or events.  Further, the charges were formulated on rules and evidence that did not exist.  He was not given any additional opportunity

9

to respond after these revelations were made. Such a state of fairs is more than sufficient to present a plausible basis for demonstrating that plaintiff was deprived of an opportunity to understand the charges and prepare a meaningful response.

Defendants' reliance on Gniotek, Copeland v. Philadelphia Police Dept., 840 F.2d 1139, 1142 (3d Cir. 1988) and Schmidt v. Creedon, 639 F.3d 587, 599 (3d Cir. 2011) to dispense with any need to provide formal notice is misplaced. Each of these cases is distinguishable based on its attendant circumstances.

In Gniotek, several police officers were identified in a corruption trial in federal court as officers who had taken bribes. Gniotek, 840 F.2d at 242. In a pre-suspension meeting each police officer was given a form containing the nature of the charges, a summary of the evidence against him and his Miranda rights. Id. at 244. The form specifically identified the individual who had provided the testimony implicating the officer, the substance of the officer's illegal activity and the general time frame during which the illegal conduct had occurred. The Third Circuit ruled that the form contained sufficient specificity to provide the officers with the opportunity to determine which facts within their knowledge might enable them to mitigate or deny the charges. Id.

In Copeland, a fellow officer accused Copeland of using drugs in front of her. Copeland, 840 F.2d at 1142. As a result, Copeland was ordered to submit a urinalysis. Id. After Copeland's urinalysis tested positive for cannabinoids, an inspector interviewed Copeland before his suspension or termination. Id. During the interview the inspector orally told Copeland about the positive test results. Id. Copeland denied using drugs and suggested passive inhalation produced the positive results. Id. The Third Circuit explained that "[g]iven Copeland's status as a police officer, his having submitted a prior urinalysis, his awareness of the reason for the current test, and his being advised that he tested positive, we think that the information provided

him by the city was sufficient to fulfill the due process requirement" of explaining the existing evidence. Id. at 1145.

In Schmidt, officer Schmidt logged a complaint given by a fellow officer into a computerized system. The concomitant electronic entry accused three superior officers of criminal conduct. Schmidt did not seek review or approval from his chain of command before filing the electronic posting. Schmidt, 639 F.3d at 590-91. Schmidt received a letter prior to a disciplinary hearing that indicated he was being the charged with (1) leaving his assigned duty post without permission, (2) entering a restricted area without authorization, (3) entering information into a computer system without permission and with the intent to undermine the Capitol Police and (4) insubordination. The Third Circuit found that Schmidt received sufficient notice of the conduct forming the basis for the disciplinary action. Schmidt, 639 F.3d at 599. It rejected an argument that the pre-suspension notice needed to be more specific as to the rules that were violated by his conduct. Id. at 599-60.

Defendants argue that plaintiff had actual knowledge of the charges against him because he knew the circumstances underlying his suspension and leading to the interview on September 8, 2009, and the purported Loudermill hearing. What defendants overlook is that in each of the referenced cases the employees had actual notice of the charges against them and the circumstances supplied a basis for understanding the rules upon which the disciplinary action was predicated. Being notified of (1) specific testimony accusing one of taking bribes and (2) giving a positive urinalysis for illicit drug use need no further explanation to understand the authoritative basis for the contemplated action: both are forms of illegal conduct under state and federal law. Similarly, providing an officer with notice that he is being accused of insubordination based on the filing of a complaint without permission and with the intent to undermine the entire police force provides notice that the discipline is based on failure to follow

mandated procedure and directives concerning the chain of command. While additional detail might have been more enlightening, nothing more was needed to ascertain the nature of the charges being leveled against the individual.

Here, in contrast, the circumstances only established that an arrestee had died after being taken into custody by plaintiff, placed in the custody of the warden and secured in a manner that was designed to protect the individual from the perceived risks of injury or death. Such an event does not give rise to any inference that the officer has engaged in conduct that is illegal or in violation of well-known rules and regulations. And the allegations of plaintiff's complaint do not supply additional information indicating that plaintiff's conduct would be understood to have been of such a character. Under these circumstances the argument that plaintiff had adequate notice because he was aware of the events that led to his suspension and termination begs the question.

Plaintiff's complaint states a "stigma-plus" claim. It has long been recognized that an individual has a protectable interest in his or her reputation. Hill v. Borough of Kutztown, 455 F.3d 225, 235 (3d Cir. 2006) (citing Wisconsin v. Constantineau, 400 U.S. 433 (1971)). "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Id. (quoting Wisconsin, 400 U.S. at 437).

Nevertheless, "reputation alone is not an interest protected by the Due Process Clause." Id. at 236 (quoting Versarge v. Township of Clinton, New Jersey, 984 F.2d 1359 (3d Cir. 1993) (citing Paul v. Davis, 424 U.S. 693 (1976)). In order to state "a due process claim for a deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." Id. (citing Paul v. Davis, 424 U.S. 693 (1976)).

In order to satisfy the stigma prong, a public employee must allege that the "stigmatizing statement(s) (1) were made publicly and (2) were false." Id. (citing Bishop v. Wood, 426 U.S. 341, 348 (1976); Chabal v. Reagan, 841 F.2d 1216 (3d Cir. 1988); Anderson v. City of Philadelphia, 845 F.2d 1216, 1222 (3d Cir. 1988); and Fraternal Order of Police v. Tucker, 868 F.2d 74, 82-83 (3d Cir.1989)).  A public employee may satisfy the plus element by alleging that he or she was deprived of "a right or status previously recognized by state law." Id. at 237 (quoting Paul, 424 U.S. at 711).

The Third Circuit also has held "that a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost." Id. at 238.  In other words, in the public employment arena the stigma-plus test means "that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." Id. (citing Codd v. Velger, 429 U.S. 624, 628 (1977)).  "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" Id.

Plaintiff's allegations easily pass muster under either approach.  Plaintiff sufficiently has alleged he had a protectable property interest in his position by operation of state law and the CBA.  He also alleges defendants made accusations against him that were false.  These allegations were disseminated publicly and were adverse to plaintiff's reputation.  Plaintiff was terminated based on these accusations.

When the stigma-plus test is satisfied, the public employee "is entitled to a name-clearing hearing." Id. at 236.  The Third Court has observed that its precedent indicates "it 'is unclear whether a plaintiff would be entitled to damages in addition to or in lieu of a hearing[,]' but implie[s] that damages might be available because a name-clearing hearing might not always

13

'cure all the harm caused by stigmatizing government comments.'" Graham v. City of Philadelphia, 402 F.3d 139, 143 n.3 (3d Cir. 2005) (quoting Ersek v. Township of Springfield, 102 F.3d 79, 84 n.6 (3d Cir. 1996)).

Plaintiff has alleged numerous forms of damages flowing from the alleged injury to his reputation. These include public humiliation and embarrassment, lost employment opportunities in law enforcement, harm to his personal reputation in the community and injury to his professional reputation resulting in impaired earning capacity. The Borough has never provided plaintiff with a name-clearing hearing notwithstanding the results produced by the proceeding before the CSC. These alleged circumstances and damages are more than sufficient to survive defendants' challenge at this juncture.[3]

Defendants' efforts to parse through and eliminate some of plaintiff's asserted damages and their implicit contention that plaintiff's due process claims are subject to dismissal because he will not be able to prove entitlement to certain forms of claimed damages are misplaced. It is well settled that a violation of one's right to procedural due process is actionable without a showing of actual damages. Carey v. Piphus, 435 U.S. 247, 265 (1978) ("Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed. . . we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.") (citations omitted ); accord Dee v. Borough of Dunmore, 549 F.3d 225, 230 & n.5 (3d Cir. 2008) (public employee's

---

[3] Whether plaintiff ultimately can recover any one or more his alleged damages under such circumstances is best determined if and when it becomes necessary to do so after full development of the record. Similarly, defendants' attempt to find shelter in the fact that plaintiff does not allege that he demanded a name-clearing hearing is wide of the mark. Plaintiff is not required to do so. Ersek, 102 F.3d at 84 n. 8; Hill, 455 F.3d at 239 n. 19.

interest in avoiding suspension without cause is in itself a property interest protected by the Fourteenth Amendment).  A finding of liability in such circumstances may be vindicated by an award of nominal damages.  Carey, 435 U.S. at 265; accord Pryer v. C.O. 3 Slavic, 251 F.3d 448, 453 (3d Cir. 2001) (nominal damages are available for § 1983 civil rights violation).

Furthermore, "[i]t is well settled that compensatory damages under § 1983 are governed by general tort-law compensation theory."  Allah v Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000) (citing Carey, 435 U.S. at 255).  The cardinal principle of damages is the recovery of actual injury or harm caused by the defendant's violation of the plaintiff's constitutional rights.  Id.  "In elaborating on this principle, the Supreme Court has explained that compensatory damages for claims brought under § 1983 for violations of constitutional rights 'may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation ..., personal humiliation, and mental anguish and suffering.'"  Id.  (quoting Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)).  Punitive damages also are available where the defendant has acted with evil motive or reckless or callous indifference to the federally protected rights of another.  Id. (collecting cases in support).

It follows from these well-established principles that plaintiff's due process claims are not rendered deficient by his reinstatement and receipt of back-pay.  To the extent plaintiff has received such remedies in full, they merely are removed from the scope of actual damages.  Similarly, plaintiff may seek to convince the finder of fact that he has suffered actual monetary

losses from any proved violation of his due process rights, including the loss of overtime pay and/or the loss of outside employment opportunities and/or impairment in his earning capacity.[4]

Defendant's contention that plaintiff's effort to obtain relief for his suspension is time barred is unavailing. Under the Federal Rules of Civil Procedure, a statute of limitations defense must be raised in the answer because Rule 12(b)(6) does not authorize the defense to be raised by motion. Robinson v. Johnson, 313 F.3d 128, 134–35 (3d Cir. 2002), cert. denied, 540 U.S. 826 (2003). Nevertheless, "the law of this circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Id. at 135. "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Id.

"Actions brought under 42 U.S.C. §1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued." Larsen v. State Employees' Ret. Sys., 553 F. Supp.2d 403, 415 (M.D. Pa. 2008) (quoting O'Connor v. City of Newark, 440 F.3d 125, 126 (3d Cir. 2006)). Pennsylvania law provides a two-year statute of limitations. 42 Pa. C. S. § 5524.

An accrual date of a §1983 claim is governed by federal common-law tort principles. Larsen, 553 F. Supp.2d at 416. Under this approach, "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."

---

[4] Of course, to the extent plaintiff fails to establish an actual due process violation under the property right or stigma-plus framework set forth above, he cannot seek to recover lost overtime during the period he lawfully was suspended and/or terminated from his position. See e.g. Skrutski v. Marut, 288 Fed. App'x. 803, 808 (3d Cir. 2008) (lost overtime by public employee due to alleged retaliation not a protectable property interest in itself and thus not a recoverable loss in the absence of an independent procedural or substantive due process violation) (citing with approval Rolon v. Henneman, 517 F.3d 140, 148 (2d Cir. 2008)).

16

Id. (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)).  Therefore, the "cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based."  Id. (quoting Sameric Corp. of Del. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998)).

Plaintiff was suspended on August 15, 2009.  Second Amended Complaint at ¶ 23.  He knew of the adverse action when it occurred.  Therefore, absent some basis to toll the statute or modify the accrual date, the statute of limitations seemingly ran as of August 15, 2011.  The complaint was filed October 26, 2011.

Plaintiff contends that his due process claims properly are premised in part on his suspension and the timeliness of this aspect of his claims is proper under the "continuing violation doctrine."  Given the facts as alleged and as construed in plaintiff's favor, we agree.

In order to establish a claim under the continuing violation doctrine, the plaintiff must (1) demonstrate that at least one act occurred within the filing period and (2) establish that the alleged injury is more than the occurrence of sporadic events.  Larsen, 553 F. Supp.2d at 417 (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995)). When analyzing the second step, courts consider three factors: "(1) subject matter - whether the violations constitute the same type . . ., tending to connect them in a continuing violation; (2) frequency - whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence - whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights."  Id.  (citing  Cowell v. Palmer Tp., 263 F.3d 286, 292 (3d Cir. 2001)).

Plaintiff's claims stemming from the suspension satisfy the above factors.  First, plaintiff's termination occurred fewer than two years prior to the filing of the action.  Second, plaintiff's termination stems from his suspension and the gravamen of his claims is that throughout  the entire process he was not informed of the charges against him and given an

17

opportunity for meaningful response. Third, plaintiff alleges defendants failed to inform him of the charges and provide an opportunity to be heard throughout his suspension, interview, and purported <u>Loudermill</u> hearing. Second Amended Complaint at ¶¶ 23, 27, 29. Finally, plaintiff was suspended immediately on August 15, 2009, without notice or a hearing. <u>Id.</u> at ¶ 23. Because he did not know the specific conduct and alleged violations underlying his suspension, a reasonable inference can be drawn that he did not presume the suspension would become permanent. To the contrary, a reasonable inference can be drawn that plaintiff would have understood the suspension to be nothing more than a temporary, routine measure commonly undertaken in such settings/circumstances. Because the facts as alleged and the reasonable inferences drawn therefrom satisfy the applicable requirements, defendants have not met their burden of proving that the statute of limitations bars plaintiff's claims for relief to the extent they are based on his suspension.

Finally, it is premature to evaluate any defense based on deposition testimony or other non-public records not forming an integral part of the complaint. Neither a motion to amend or dismiss affords the opposing party the due process needed to undertake such an analysis.

It is clear that plaintiff has set forth valid claims in the second amended complaint. Defendants' challenges pursuant to Rule 12(b)(6) have been adjudicated. There can be no improper prejudice from having to defend against valid claims. Accordingly, plaintiff's request for leave will be granted and defendants will be directed to file an answer.

<u>Date: August 6, 2012</u>

<u>s/ David Stewart Cercone</u><br>
David Stewart Cercone<br>
United States District Judge

cc: Susan E. Mahood, Esquire
 Alan T. Shuckrow, Esquire
 Trent A. Echard, Esquire

 (*Via CM/ECF Electronic Mail*)